FREE CHASE *vs.* CHARLES KITTREDGE & others.

It is not a sufficient attestation of a will for a subscribing witness to write his name in the absence of the testator, and in anticipation of the testator's signature, although he afterwards acknowledges it in the presence of the testator and of the other subscribing witnesses.

APPEAL from a decree of the judge of probate, allowing an instrument as the will of Simeon Daniels.

At the trial in this court, before *Gray,* J., one of the issues to the jury was as to the execution of the will. Joseph A. Sprague, one of the attesting witnesses, testified as follows:

" Mr. Daniels came into my office and told me how to draw his will. I made a rough sketch of a will and read it to him, and he said it was all right, and went out. I copied it, and he came back and sat down by my side. I read the will down to the seal, and said, ' Does that suit you ?' He said it did. I

then read the witness clause and my name, and said, ' Mr. Dan-
iels, I have written my name as a witness to your will.' After
talking with him some time I went and called two other wit-
nesses, Holden R. Greene and Carlton Cushman. When they
came in they stood around the table. I said, ' This is Mr. Dan-
iels's last will and testament ; ' and he bowed assent. He took
the pen and wrote his name opposite the seal. I either repeated
or read the witness clause to the other two witnesses. Then,
pointing to my signature, I said to Cushman or Greene, ' Sign
your name under mine, where I have signed as a witness.'
Cushman signed his name, and Greene signed his name, and
they did not stay a moment. Mr. Daniels remained after they
went out. We three were all present when he signed his name.
We were all close together, and he could see where I pointed for
the other witnesses to sign. The will was in full view." On
cross-examination this witness stated, " I put on the seal and
my name while he was gone. I did not rewrite or retrace my
name after he signed his."

The heirs at law objected that the facts stated by this witness
would not warrant a verdict or decree establishing the will ; and
the case was thereupon reserved for the determination of the
whole court.

*E. Mellen*, for the appellants, cited, in addition to cases cited
in the opinion, *Hall* v. *Hall*, 17 Pick. 373, 375; *Re Summers*,
7 Notes of Cas. 562; *S. C.* 14 Jur. 791, and 2 Rob. Eccl. 295;
*Faulds* v. *Jackson*, 6 Notes of Cas. Supp't, 1; *Leech* v. *Bates*,
Ib. 704; *Re Webb*, 1 Jur. (N. S.) 1096; *Ilott* v. *Genge*, 3 Curt.
Eccl. 160; *S. C.* 4 Moore P. C. 265.

*P. E. Aldrich*, for the appellee. It is fully settled that a tes-
tator need not execute his will in the presence of the witnesses,
and that they need not sign in the presence of each other. It is
enough if the testator sees their attestation, or is in a situation
where he may see it. *Hogan* v. *Grosvenor*, 10 Met. 56. *Dewey*
v. *Dewey*, 1 Met. 352. If in this case the witness Sprague had
retraced his name with a dry pen, the attestation would have
been sufficient. *Hall* v. *Hall*, 17 Pick. 375. *Jones* v. *Lake*, 2
Atk. 177, *n.* What was done by the witness was equally

significant with retracing his name with a dry pen. See *Dewey*
v. *Dewey*, above cited ; *White* v. *Trustees of British Museum*, 6
Bing. 310. Where a statute required wills to be executed in
the presence of witnesses, it has been held that it was not essen-
tial that the signature should be made in their presence, but an
acknowledgment of it was sufficient. *Adams* v. *Field*, 21 Verm.
256. See also 1 Redfield on Wills, 220, *n.* Wills have also
been held well executed, where the testators did not sign till af-
ter the witnesses. *Rosser* v. *Franklin*, 6 Grat. (Va.) 1. *Vaughan*
v. *Burford*, 3 Bradf. (N. Y.) 78. There is a conflict between
recent English and American authorities upon the point whether
the witnesses must subscribe in the actual presence of the tes-
tator. See *Jesse* v. *Parker*, 6 Grat. 57 ; *Upchurch* v. *Upchurch*,
16 B. Monr. (Ky.) 102; *Horton* v. *Johnson*, 18 Georgia, 396;
*Boldry* v. *Parris*, 2 Cush. 438. A witness may adopt a name
already written, as well as rewrite it. *Pollock* v. *Glassell*, 2 Grat.
439. *Sturdivant* v. *Birchett*, 10 Grat. 67. *Ex parte Leroy*, 3
Bradf. 227. *Campbell* v. *Logan*, 2 Bradf. 90. *Ruddon* v. *Mc-
Donald*, 1 Bradf. 352. 1 Redfield on Wills, 247. The recent
English cases, which are in conflict with the American cases,
appear to have been decided upon the most strict and narrow
construction of the English statutes, sacrificing substance in ad-
hering to form. The reasoning of Lord Campbell in *Roberts*
v. *Phillips*, 4 El. & Bl. 450, seems more worthy of consideration.

GRAY, J. This case presents an important question of con-
struction of the statute of wills, upon which there has been
much apparent, and some real, conflict of judicial opinion, and
in the consideration of which it is essential to keep in mind
the exact language of the enactments under which cases have
arisen.

By the original English statute for the prevention of frauds
and perjuries, passed in 1676, it was enacted that " all devises
and bequests of any lands or tenements shall be in writing, and
signed by the party so devising the same, or by some other per-
son in his presence and by his express directions, and shall be
attested and subscribed, in the presence of the said devisor, by
three or four credible witnesses, or else they shall be utterly void

and of none effect." *St.* 29 Car. II. *c.* 3, § 5. That act did not extend to the Colony of Massachusetts, which had been previously settled, and was not named therein. 2 P. W. 75. *St.* 25 Geo. II. *c.* 6, § 10. But the provision was reënacted here in the same words in the first year after the Province Charter; and again in 1783, substituting only the words "three or more" for "three or four" witnesses. Prov. St. 4 W. & M. (ed. 1726,) *c.* 3, § 3, p. 5; Anc. Chart. 234. *St.* 1783, *c.* 24, § 2. It was retained, and extended to personal estate, in 1836, in this form: "No will" (excepting nuncupative wills) "shall be effectual to pass any estate, whether real or personal, nor to charge or in any way affect the same, unless it be in writing, and signed by the testator, or by some person in his presence and by his express direction, and attested and subscribed, in the presence of the testator, by three or more competent witnesses." Rev. Sts. *c.* 62, § 6. And the words just quoted have been incorporated, with trifling variations, into the General Statutes, *c.* 92, § 6.

This provision, it will be observed, does not expressly require that the testator should sign in the presence of the witnesses; nor that the witnesses should subscribe in the presence of each other, nor even that they should know that the instrument is a will. Courts will not require formalities which the statutes do not. It is accordingly the well settled construction, both in England and in this commonwealth, that it is sufficient for the testator, in any form of words, to acknowledge or recognize his signature in the presence of the witnesses, either together or separately, with no attestation clause beyond the single word "witness," and without their knowing what the instrument is. The authorities upon these points are collected in the elaborate judgment of Mr. Justice Dewey in *Ela* v. *Edwards*, 16 Gray, ·
It is equally well settled that when the attesting witnesses are dead or out of the state, proof of their handwriting is sufficient evidence that the statute has been complied with. *Nickerson* v. *Buck*, 12 Cush. 344. *Ela* v. *Edwards*, just cited.

The positive requirements of the statute have always beer reasonably construed by the courts so as not needlessly to em barrass compliance with them in making any will, or proof of

such compliance upon the offer of the will for probate. It has long been held that evidence that a witness was in such a position that he and the testator might have seen one another will authorize the inference that he was in the presence of the testator and sufficiently near to attest his signature. And the signature of the testator, if affixed in good faith for the purpose of executing his will, need not be in any particular form ; a man who cannot write his own name is not to be deprived of the right to make his will; and courts will not go into nice questions of the degree of the testator's education or his physical strength to sign his name in full, but will hold a mark sufficient in any case. *Baker* v. *Dening*, 8 Ad. & El. 94 ; *S. C. nom. Taylor* v. *Dening*, 3 Nev. & P. 228. *Nickerson* v. *Buck*, 12 Cush. 344.

The question now before us is of the meaning of that clause of the statute which requires the witnesses to " attest and subscribe " the will " in the presence of the testator."

The only case under the *St.* of 29 Car. II., which we have seen, in which it was even contended by counsel that an acknowledgment by a witness, in the presence of the testator, of a signature made in his absence, was equivalent to a subscription in his presence, arose only six years after the passage of the statute ; and the point does not appear to have been then decided. *Risley* v. *Temple*, Skin. 107. But the difference in the two clauses of the statute, the one not requiring the testator to sign in the presence of the witnesses, while the other expressly required the witnesses to subscribe in the presence of the testator, soon came to be recognized, and does not appear to have been afterwards lost sight of. *Hoil* v. *Clark*, 3 Mod. 219, 220. *Lee* v. *Libb*, 1 Show. R. 69. *Dormer* v. *Thurland*, 2 P. W. 510. *Stonehouse* v. *Evelyn*, 3 P. W. 254. Bac. Ab. Wills, D, 2. 2 Bl. Com. 377. 1 Browne's Civ. & Adm. Law, *c.* 10, *note* 27. 1 Roberts on Wills, (Amer. ed.) 131. Fryer's Proctor's Practice, 127. The statute of frauds, while it required a will to be " attested and subscribed in the presence of the devisor by three or four credible witnesses," required a revocation to be by a written will, " or other writing of the devisor, signed in the presence of three or four

witnesses." *St.* 29 Car. II. *c.* 3, §§ 5, 6. The court of king's bench in 1689 were of opinion that a will, to revoke a former will, must be "signed and subscribed" by the witnesses in the presence of the testator. *Eccleston* v. *Speke*, Carth. 81 ; *S. C.* Comb. 158. And Lord Chancellor Cowper was of the same opinion. *Onions* v. *Tyrer*, 1 P. W. 344. Lord Hardwicke, Chief Justice Willes, Chief Baron Parker, and Sir John Strange, M. R., when holding, in accordance with earlier and later decisions, that a testator's acknowledgment of his signature before the witnesses was a sufficient signing by him, even of a will revoking an earlier one, and that the words "signed in the presence of three or four witnesses," in the section concerning revocations, were limited to the last antecedent, "other writing," clearly implied that those words would not be satisfied by acknowledging a signature, instead of actually signing in the presence of the witnesses. *Ellis* v. *Smith*, 1 Ves. Jr. 10 ; *S. C.* 1 Dick. 225. And see 1 Jarman on Wills, (4th Amer. ed.) 153. The English cases in which it has been held that the witnesses to a will are not required by § 5 of *St.* 29 Car. II. to recite on the paper that they subscribe their names in the presence of the testator, declare that they must actually so sign in his presence. Thus the court of common bench in 1735, as reported by Lord Chief Baron Comyns, said, " The witnesses, by the statute of frauds, ought to set their names as witnesses in the presence of the testatrix." *Hands* v. *James*, Com. R. 532. And in a later case Lord Eldon said in the house of lords, " Your lordships know that it is necessary that the three witnesses should sign in the presence of the testator." " If it is proved that they did actually sign in the presence of the testator, the not recording that circumstance will not vitiate the will." *Rancliffe* v. *Parkyns*, 6 Dow, 202.

A new statute of wills was passed in England in 1837, requiring that the signature of a testator to a will, either of real or personal estate, shall be made or acknowledged by him " in the presence of two or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the testator." *St.* 1 Vict. *c.* 26, § 9. The decisions under this statute are uniform that one witness does

not " attest and subscribe in the presence of" another unless he actually affixes his signature in the presence of the other ; and these decisions bear directly upon the construction of the same words in the English *St.* of 29 Car. II. and in our own statutes, requiring the will to be " attested and subscribed in the presence of" the testator by the witnesses. The point was adjudged in the prerogative court of Canterbury by Sir Herbert Jenner Fust in several cases, the last of which, decided after full argument, and recognizing that " this case must form a leading case of its class," was strikingly analogous to the present. There the testator signed a codicil in the presence of one witness only, who at his request attested and subscribed it. Afterwards another witness, at the testator's request and in his presence, also attested and subscribed it, the first witness first pointing to her signature and saying, " There is my signature, and you had better place yours underneath." *Re Allen,* 2 Curt. Eccl. 331. *Re Simmonds,* 1 Notes of Cas. 409; *S. C.* 3 Curt. Eccl. 79. *Moore* v. *King,* 3 Curt. Eccl. 243; *S. C.* 2 Notes of Cas. 45. In a subsequent case the same able judge said of the witnesses, " No authority is given to them, as in the instance of the testator, to *acknowledge* their signatures previously written. The witnesses are to *subscribe,* in other words, they are required, I conceive, to do some act which shall be apparent on the face of the will. To pass over a signature, previously made, with a dry pen amounts, I think, to no more than an acknowledgment of a signature, which in the case of a witness has already been held not to be sufficient. *Moore* v. *King.* Saying and doing are not the same thing." And he therefore held that upon the reëxecution of a will an attesting witness did not " subscribe " by tracing over his signature with a dry pen, " as nothing in fact was written." *Playne* v. *Scriven,* 1 Rob. Eccl. 775; *S. C.* 7 Notes of Cas. 122. He also decided that it was not an attestation and subscription for a witness to add his residence after his name already subscribed on a previous day. *Re Trevanion,* 2 Rob. Eccl. 311.

Other decisions of Sir Herbert Jenner Fust are directly to the point that a signature by the testator after the witnesses have signed is insufficient, even if he has previously read the whole

will to them, or they add seals to their names after he signs.
In the first of these cases, the judge significantly asked, " Is the
paper a will before it is signed by the testator ? " *Re Olding*,
2 Curt. Eccl. 865. *Re Byrd*, 3 Curt. Eccl. 117. In a later case,
which was fully argued, he reaffirmed the rule, and gave his rea-
sons more at length, saying, " The words of the section are very
precise, and I think it would be attended with dangerous conse-
quences, if the court were to hold a will valid which has been
signed in the presence of two witnesses, who have attested it
before the signature of the testator was affixed to the will ; for
where is the court to draw the line ? Suppose the witnesses
attested one hour before the testator signed, or a day, or a week,
or any other time ; where is the court to stop if it gave a lati-
tude of construction to this section of the act ? Suppose it
were one month, or six months, or a twelvemonth, after the tes-
tator had signed the will; and whether it be at the time of the
transaction or some time before makes no difference." *Cooper*
v. *Bockett*, 3 Curt. Eccl. 659, 660. Dr. Lushington, sitting in
the same court, held it to be a fatal objection to the validity of
a will, that " there is no proof that the signature was affixed
prior to the subscription of the witnesses." *Hudson* v. *Parker*,
1 Rob. Eccl. 39. And Sir John Dodson made a similar deci-
sion in *Shaw* v. *Neville*, 1 Jur. (N. S.) 408.

The law is stated in the same way, without criticism or dis-
sent, by Lord St. Leonards, in his Essay on the Real Property
Statutes, 332, 336 ; and in his Handybook of Property Law,
Letter XIX. And the decisions of Sir Herbert Jenner Fust
have been approved and followed by Sir Creswell Creswell in
the new English court of probate and divorce. *Charlton* v.
*Hindmarsh*, 1 Swab. & Tristr. 433. *Re Cunningham*, 29 Law
Journal, (N. S.) (Prob.) 71. *Re Hoskins*, 32 Law Journal, (N. S.)
(Prob.) 158.

In *Charlton* v. *Hindmarsh, ubi supra*, one witness, Frederick
Wilson, signed his name in the testator's presence and at his
request in the morning, omitting to cross the F in his signature.
In the afternoon of the same day another witness attested and
subscribed the will in the presence and at the request of the

testator; and the first witness, as he testified, then acknowledged his signature to the second by saying that his name was there already, crossed the F, merely in pursuance of his habit of sup plying the omission when he noticed it, and added the date, thinking that equal to a repetition of the signature, and with the object of making his signature of the morning a complete signature. From the decision of the judge ordinary against the will an appeal was taken to the house of lords, who, by the concurrent opinions of Lords Campbell, Cranworth, and Chelmsford, unanimously affirmed the judgment. *Hindmarsh* v. *Charlton*, 8 H. L. Cas. 160. The reasons for the decision are best stated by Lord Cranworth, thus : " For the security of mankind, the legislature has thought fit to prescribe certain forms and rules which are necessary to be complied with, in order to authorize a distribution of property, different from that which the law would make if there was no will ; the legislature, in truth, on these forms being complied with, putting into the hands of the party who is making a will, power to dispose of his property in a way contrary to what, but for the will, would be the provision of the law. That it is reasonable that, under these circumstances, there should be some rules to be acted upon, no one can doubt ; and those rules being established, this house, as the ultimate court of appeal, would be, I think, ill discharging its duty to the public if it were to listen to suggestions of minute differences which would not meet the ordinary apprehensions of mankind, and which would necessarily or naturally lead to great discussion and litigation. It has been determined, upon the construction of the last statute, and quite rightly determined, that there must be a subscription by two witnesses after the testator has signed the will in their presence, or acknowledged his signature in their presence." " The acknowledgment of his signature by a testator is sufficient, but a witness stands in a different position. After the signature of the will by the testator, his acknowledgment will do ; but by the express terms of the statute that will not do with regard to the witness. If he had said nothing at all, the putting a mark across the F might have amounted to an acknowledgment of the signature

but that will not do, and yet the facts here cannot amount to more than that." 8 H. L. Cas. 168, 169, 170.

We have been led to make a full collection and statement of the English authorities upon this point, because they have been said by those taking a different view of the law to be few in number and ill considered. An English case or two from which some assistance has been sought by way of analogy to support this will remain to be noticed.

The court of queen's bench in *Roberts* v. *Phillips*, 4 El. & Bl. 450, held that the subscription of the witnesses need not be below the signature of the testator or the end of the will. And there is an early ruling of Lord Chief Justice Trevor to the same effect. *Peate* v. *Ougly*, Com. R. 197. But in each of those cases there was direct or circumstantial evidence that the names of the witnesses were signed after the testator's signature and in his presence; there is no intimation by the court that any presumption of a valid execution would arise, even after the death of the witnesses, from subscriptions so placed; and Lord Campbell, who delivered the opinion in *Roberts* v. *Phillips*, afterwards concurred in the judgment of the house of lords in *Hindmarsh* v. *Charlton*, above cited. The decision in *Roberts* v. *Phillips* went no farther than to allow an attestation, apparently insufficient, to be made good by evidence that the requisites of the statute had been actually complied with. But if the signature of a witness, made before that of the testator, is allowed to be sufficient upon proof of a later acknowledgment by the witness in the testator's presence, then the witnesses may subscribe an instrument not yet signed by the testator and in his absence, with the honest intention of acknowledging their subscriptions to him after he shall have signed; his name may be signed at any time afterwards, without any witness to observe and testify whether it is affixed by him or by his authority or not, and, if it is, whether he is sane or insane; and the previous subscription of the witnesses be held after his death to be evidence of a due execution and attestation, when in fact his name is forged, or at least there has been no subscription or acknowledgment by the witnesses in his presence

and so, on the loosest interpretation, no compliance with the statute.

Reference has also been made to the rule that a witness may subscribe by a mark as well as by writing his name in full. This is now well settled both in England and in the United States. 1 Jarman on Wills, (4th Amer. ed.) 73 and Amer. note. The counsel for the appellee asked, "If a witness may adopt what is made by another, cannot he adopt what is made by himself?" But the mark is not made by another, but by the witness himself, and has never, so far as we are informed, been held sufficient unless affixed in the presence of the testator. Even a signature of a witness's own name when his hand is guided by another person is held sufficient in England only because the witness has some share in the writing. *Re Mead,* 1 Notes of Cas. 456. *Re White,* 2 Notes of Cas. 461. *Harrison* v. *Elvin,* 3 Q. B. 117. *Lewis* v. *Lewis,* 2 Swab. & Tristr. 153 And we have seen no American decision which goes further, except that of the surrogate in *Campbell* v. *Logan,* 2 Bradf. 90. A subscription of the name or mark of a witness by another person in the presence of himself and the testator might possibly be a literal compliance with the statute, but, not being in the handwriting of the witness, would create no presumption of a lawful execution and attestation, without affirmative evidence that it was so made. In the case referred to in 3 Dane Ab. 452, in which this court held the mark of a witness a sufficient subscription, the record shows that the will of Stephen Needham was admitted to probate upon the testimony of the three witnesses to a compliance with all the statute requirements, and, among others, "that they and each of them in the presence of the said Stephen and at his request and in the presence of each other subscribed the said instrument, namely," two of them "severally wrote their names at full length upon the said instrument" and the third "made a mark thereto, upon and near which and with her consent the said Stephen wrote her name at full length." *Needham* v. *Needham,* Essex, November Term 1802.

There is no direct decision in this commonwealth upon the

question whether the subscription of a witness to an instrument yet unsigned by the testator and in his absence may be made good by afterwards acknowledging it in his presence. Certainly no careful attorney or scrivener would advise or permit such an attestation and subscription. And many expressions in our books tend to show that it would be invalid. Mr. Dane recognizes the doctrine that if the testator owns his signature to the witnesses, it is sufficient, but assumes that the witnesses must subscribe in his presence. 4 Dane Ab. 562, 563. In *Laughton* v. *Atkins,* 1 Pick. 543, 544, Chief Justice Parker, quoting *Eccleston* v. *Speke,* above cited, said that to comply with the statute of frauds, a will must be " signed and subscribed by the witnesses in the presence of the testator." The commissioners on the Revised Statutes, in recommending that the formalities required for a will should also be required for an instrument of revocation, (as the legislature accordingly did in the Rev. Sts. c. 62, § 6,) remark that our statute of 1783, like the *St.* of 29 Car. II., from which it was copied, made this difference between the two, which they italicize as follows : " The former must be attested and subscribed by three or more witnesses *in the presence of the testator ;* but it is not required that *he* should sign it *in their presence ;* whilst an instrument revoking a will must be signed by the testator *in the presence of three or more witnesses,* but it is not required that *they* should subscribe it in *his* presence, nor indeed that they should subscribe it at all." In *Dewey* v. *Dewey,* 1 Met. 354, Mr. Justice Dewey said, " It can hardly be supposed that the testator, who was by his own active agency procuring the authentication of the instrument by the requisite witnesses, would have omitted the first step necessary to its due execution, viz. the signature by himself." These words are quoted with approval in *Ela* v. *Edwards,* above cited. In *Boldry* v. *Parris,* 2 Cush. 433, the questions whether a witness might sign before the testator, and whether an acknowledgment by a witness in the presence of the testator was equivalent to a subscription, were raised by counsel, but not noticed in the opinion because there was no evidence that one of the witnesses so much as acknowledged his signature in the testator's presence.

The supreme court of Vermont, under a statute exactly like our own, except in requiring the witnesses to attest and subscribe in the presence of each other as well as of the testator, has indeed held, with the courts of England and of Massachusetts, that an acknowledgment by the testator of his signature in the presence of the witnesses is sufficient. *Adams* v. *Field*, 21 Verm. 256. But the same court has held that an acknowledgment by one witness, in the presence of the others and of the testator, of a signature made in the absence of one of them, is not a subscription in their presence. *Pope* v. *Pope*, 38 Verm.

The supreme court of New York, under the provisions of the English *St.* of 29 Car. II., assumed it to be necessary that the witnesses should subscribe in the presence of the testator, and inferred the fact of their having so subscribed from their signatures to an ancient will, although not stated in the attestation clause. *Jackson* v. *Christman*, 4 Wend. 282. And in *Peck* v. *Cary*, 27 N. Y. 31, 32, Chief Justice Denio quoted as entitled to great weight the opinions of Sir Herbert Jenner Fust in *Cooper* v. *Bockett*, above cited, and other cases. The decisions cited by the appellee from Bradford's Surrogate Reports were made under a statute which required each attesting witness to " sign his name as a witness, at the end of the will, at the request of the testator," but omitted the requirement of earlier statutes that the witness should sign in the testator's presence. Rev. Sts. of N. Y. (3d ed.) pt. 2, *c.* 6, § 32. 4 Kent Com. (6th ed.) 515. *Rudder* v. *McDonald*, 1 Bradf. 352. *Vaughan* v. *Burford*, 3 Bradf. 78. *Hoysradt* v. *Kingman*, 22 N. Y. 372. The statute of Illinois under which the case of *Vaughan* v. *Vaughan*, 13 Amer. Law. Reg. 735, arose, had a similar omission, and only required the will to be " attested in the presence of the testator by two or more credible witnesses." Comp. Sts. of Illinois of 1856, *c.* 110, § 1. And these decisions were but of single judges in county courts of probate.

The case of *Miller* v. *McNeill*, 35 Penn. State R. 217, to which the appellee has referred, arose under the Pennsylvania statute of 1833, providing that " every will shall be in writing, and,

unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof or by some person in his presence and by his express direction, and in all cases shall be proved by the oaths or affirmation of two competent witnesses." By that statute, as by the previous law of Pennsylvania from very early times, the witnesses need not subscribe at all, even to a will of real estate. *Hight* v. *Wilson*, 1 Dall. 94. *Rohrer* v. *Stehman*, 1 Watts, 463. In Delaware, under a statute like ours, it was held that the witnesses must sign in the presence of the testator, and the distinction between such a statute and that of Pennsylvania was pointed out by Chief Justice Clayton. *Rash* v. *Purnel*, 2 Harring. 458. *Pennel* v. *Weyant*, Ib. 506.

In New Jersey, under a statute in terms requiring wills to be " signed by the testator in the presence of the subscribing witnesses," an acknowledgment of his signature is held insufficient. *Den* v. *Mitton*, 7 Halst. 70. *Combs* v. *Jolly*, 2 Green Ch. 625. *Mickle* v. *Matlack*, 2 Harrison, 86. And in the last case Chief Justice Hornblower, who dissented on this point, as well as Mr. Justice Dayton, who concurred with the majority of the court, thought that the witnesses must sign in the presence of the testator. 2 Harrison, 96, 116.

The supreme court of North Carolina, under a statute like ours of 1783, have held in at least three cases, the facts of two of which were singularly like those now before us, that a will could not be established unless the witnesses actually set their names in the testator's presence, and that, as said in the earliest case, " it was the intention of the legislature that the heirs at law should not be disinherited but by a strict compliance with the words of the act, and that the door to fraud should be completely shut." *Ragland* v. *Huntingdon*, 1 Ired. 561. *Graham* v. *Graham*, 10 Ired. 269. *In re Cox's Will*, 1 Jones, 321.

In Connecticut and Kentucky it has indeed been held, under statutes not unlike our own, that a witness might sign in the presence of the testator before he signed, and acknowledge it afterwards. *O'Brien* v. *Galagher*, 25 Conn. 229. *Swift* v *Wiley*, 1 B. Monr. 117, approved in *Upchurch* v. *Upchurch*,

16 B. Monr. 113. But the only decisions, which have come to our notice, in which an acknowledgment by a witness to a will in the testator's presence, of a signature affixed in his absence, has been held to be an attestation and subscription in his presence, are those of a bare majority of the court of appeals of Virginia in *Sturdivant* v. *Birchett*, 10 Grat. 67, and *Parramore* v. *Taylor*, 11 Grat. 220. We have not overlooked the similar opinion expressed by Mr. Redfield in his learned Treatise on Wills, 230, 247, and in 13 Amer. Law Reg. 741.

This analysis of the cases shows that by the preponderance of American authority, as by the uniform current of the English decisions, an express requirement of statute that one person shall sign or subscribe in the presence of another is not complied with by signing in his absence and merely acknowledging in his presence. And upon full consideration we are satisfied that in this, as in most other legal matters, reason and principle are on the side of authority and precedent.

The statute requires that the will shall " be in writing and signed by the testator," and shall be " attested and subscribed, in the presence of the testator, by three or more competent witnesses." He is not required to write his signature in their presence, but it is his will which they are to attest and subscribe. It must be his will in writing, though he need not declare it to se such. It must therefore be signed by him before it can be attested by the witnesses. He must either sign in their presence, or acknowledge his signature to them, before they can attest it. The statute not only requires them to attest, but to subscribe. It is not sufficient for the witnesses to be called upon to witness the testator's signature, or to stand by while he makes or acknowledges it, and be prepared to testify afterwards to his sanity and due execution of the instrument, but they must subscribe. This subscription is the evidence of their previous attestation, and to preserve the proof of that attestation in case of their death or absence when after the testator's death the will shall be presented for probate. It is as difficult to see how they can subscribe in proof of their attestation before they have

attested, as it is to see how they can attest before the signature of the testator has made it his written will. The manifest intention of the statute is that, 1st, the will should be put in writing and signed by the testator; 2d, his will so written be attested by the witnesses; and 3d, the witnesses subscribe in his presence in evidence of their attestation to his written will. There is less reason for requiring the testator to sign in the presence of the witnesses, than for requiring them to sign in his presence. A testator may alter his will as he pleases at any time before it is formally attested. He may write it out in full and sign it, and it has no effect as a will until duly attested. It is unimportant whether it is or is not signed by the testator until it is produced to the witnesses. It is only important that it should be his will in writing and signed, when they attest and subscribe it; and it is equally his will in writing, whether signed in their presence or at some previous time. It is the will of the testator, not of the witnesses. He must know its contents, but they need not. He has the contents, as well as his signature, by which to know that it is the instrument declaring his last wishes in respect to his estate. They need see nothing but his signature and their own. To allow them to acknowledge in his presence their names signed in his absence would open a door to mistake and fraud. If the witnesses might subscribe before they had attested his signature, and even before he had signed, of what weight could their subscription be as evidence, after their death, that the will had been duly signed and attested? But the controlling consideration is, that the statute in terms requires not only that the witnesses shall attest his will, but that they shall subscribe in his presence. The distinction in this respect between the signature of the testator and the subscription of the witnesses has existed in the statute law both of England and of Massachusetts for nearly two centuries, and been preserved in repeated enactments when other clauses have been altered. The court cannot presume so constant a difference in language to have been unintentional, or disregard it as immaterial.

As it appears by the testimony stated in the report that one of the attesting witnesses subscribed his name before the testator

signed and in his absence, the instrument offered for probate should have been disallowed.

*Decree of the judge of probate reversed.*