NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

19-P-1311                                            Appeals Court

COMMONWEALTH  vs.  JOHAN SORIANO-LARA.

No. 19-P-1311.

Suffolk.     March 4, 2021. - May 7, 2021.

Present:  Milkey, Kinder, & Sacks, JJ.

Controlled Substances.  Motor Vehicle.  Search and Seizure,
    Automobile, Probable cause, Reasonable suspicion, Threshold
    police inquiry.  Constitutional Law, Probable cause,
    Reasonable suspicion, Search and seizure.  Probable Cause.
    Threshold Police Inquiry.  Practice, Criminal, Motion to
    suppress.

Indictments found and returned in the Superior Court
Department on November 16, 2016.

A pretrial motion to suppress evidence was heard by Diane
C. Freniere, J., and a conditional plea of guilty was accepted
by Robert L. Ullman, J.

Robert L. Sheketoff for the defendant.
Ian MacLean, Assistant District Attorney, for the
Commonwealth.

SACKS, J.  The defendant appeals from a Superior Court

judge's order denying a motion to suppress all evidence obtained

during a traffic stop of the vehicle the defendant was driving.

The defendant argues, among other things, that the stop was unreasonably prolonged, so that any evidence obtained after the stop should have ended must be suppressed as the fruit of a poisonous tree.  We agree and therefore reverse.

Background.  We summarize the judge's pertinent findings of fact, supplementing with additional facts from testimony that the judge explicitly or implicitly credited.  See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).

Trooper James Farrell has served as a State trooper for approximately twenty-five years and has extensive, particularized training in narcotics enforcement, including training on identifying hidden compartments in motor vehicles. He has made more than 250 arrests for drug-related offenses, including approximately thirty arrests that involved identifying hidden compartments during a motor vehicle stop.

At approximately 2:55 P.M. on September 13, 2016, Farrell was on uniformed patrol on Route 1A in Lynn.[1]  As he approached a left-turn-only lane, Farrell noticed that a vehicle traveling in front of him, a Volvo XC-90 with Massachusetts license plates, moved from a travel lane into the left-turn-only lane without

---

[1] Route 1A was known to Farrell as a drug transportation route between Boston and the cities of Revere, Chelsea, and Lynn.

first signaling.  After both vehicles turned left onto a side street, Farrell pulled the Volvo over.

Farrell approached the Volvo and observed two occupants in the front seats.  Farrell asked the driver, later identified as the defendant, for his license and registration.  The defendant provided a Rhode Island driver's license.  The passenger stated that her mother owned the vehicle and that she (the passenger) regularly drove it.  The vehicle's registration indicated that it was registered to a third party in Foxborough.

The Rhode Island license that the defendant handed to Farrell was for a Carlos Pina-Garay and listed a residential address in Cranston, Rhode Island.  However, when Farrell asked the defendant where he lived, he replied, "Providence."  Farrell observed that both the defendant and the passenger appeared to be very nervous; they were breathing heavily and their carotid arteries were visibly pulsing in their necks.

Farrell returned to his cruiser and determined that the proffered license was valid and active, that the registration was active, and that the Volvo had not been reported stolen.  However, based on his observations, Farrell decided to call for backup.  In addition to the apparent discrepancy in the residence information provided by the defendant,[2] Farrell had

_____

[2] Farrell was aware that persons with information on their Massachusetts records that they wish to conceal, such as a

observed that when the defendant opened his wallet to retrieve his license, the wallet contained "religious icons, small pictures of saints." Moreover, there was a set of rosary beads hanging from the rearview mirror. Farrell testified that, based on his training and experience, "religious icons and good luck symbols, in and of themselves may not mean anything, but combined with all other indicators could be a[n] indicator of criminal activity."[3]

Farrell then returned to the Volvo[4] and asked the defendant where he was coming from. The defendant replied that he was coming from an auto repair shop where a friend had just repaired his brakes. In response to further questioning by Farrell, the defendant could not provide the name of the shop, its location, or his friend's name. Believing the defendant to be lying, Farrell then inspected the Volvo's wheel lug nuts and rims and observed that they were covered in dust, which was inconsistent with recent brake work. Thereafter, Farrell again asked the defendant where he lived, to which the defendant replied,

---

revoked license or an outstanding warrant, will often obtain false identification from a neighboring State.

[3] The judge explicitly declined to credit Farrell's testimony regarding the significance of the religious items.

[4] Farrell did so without waiting for backup. Ten to fifteen minutes passed before another trooper arrived.

"Cranston." Farrell pointed out that the defendant had initially said he lived in Providence. The defendant replied that Providence and Cranston were the same place.

At that time, Farrell observed significant wear on the center console panel near the temperature controls. He further observed that a carpeted panel around the center console area had been pulled out of place. On a previous occasion, Farrell had located a hidden compartment containing drugs in that exact location in a Volvo XC-90.

Farrell observed that the defendant was becoming agitated. By this time, a backup trooper had arrived, and Farrell asked the defendant to step out of the Volvo. The defendant complied, and Farrell moved him to behind the Volvo, where the defendant began yelling out in Spanish to the passenger. Farrell asked the defendant if he could identify any streets around his proffered license address in Cranston, but the defendant was unable to do so.[5] Farrell asked his age and the defendant said he was thirty-four, whereas the proffered license indicated that the holder was thirty-two. The defendant was also asked his social security number and did not answer. At that point,

---

[5] While in his cruiser, Farrell had checked the Internet for the names of streets near the Cranston address listed on the license.

Farrell placed the defendant in the rear of his cruiser and then asked the passenger to step out of the Volvo, which she did.

Farrell then returned to the Volvo's center console, pulled on the out-of-place carpeted piece, and uncovered a hidden compartment containing a metal box. Farrell opened the box and found a bundle of currency and a substance later identified as cocaine. Farrell arrested both the defendant and the passenger.

After the motion judge denied the defendant's motion to suppress, the defendant entered a conditional guilty plea to an indictment for cocaine trafficking; an indictment for money laundering was dismissed at the Commonwealth's request. See Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1499 (2019). The defendant appealed.

Discussion. We accept the judge's subsidiary findings unless clearly erroneous, see Commonwealth v. White, 374 Mass. 132, 137 (1977), aff'd by an equally divided Court, 439 U.S. 280 (1978), and we make an "independent determination on the correctness of the judge's application of constitutional principles to the facts as found" (quotation and citation omitted), Commonwealth v. Haas, 373 Mass. 545, 550 (1977), S.C., 398 Mass. 806 (1986).

We will assume without deciding that the traffic stop was valid at its inception[6] and proceed directly to the question whether the stop was unreasonably prolonged. "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' to address the traffic violation that warranted the stop." Commonwealth v. Cordero, 477 Mass. 237, 241 (2017), quoting Rodriguez v. United States, 575 U.S. 348, 354 (2015). "Police authority to seize an individual ends 'when tasks tied to the traffic infraction are -- or reasonably should have been -- completed'" (emphasis added). Cordero, supra, at 242, quoting Rodriguez, supra. The Supreme Judicial Court recently summarized the principles governing this issue as follows:

> "A valid investigatory stop cannot last longer than reasonably necessary to effectuate the purpose of the stop. The scope of a stop may only extend beyond its initial purpose if the officer is confronted with facts giving rise to a reasonable suspicion that further criminal conduct is afoot. Where an officer conducts an uneventful threshold inquiry giving rise to no further suspicion of criminal activity, he may not prolong the detention or expand the inquiry" (quotations and citations omitted).

Commonwealth v. Tavares, 482 Mass. 694, 703 (2019).

Here, based on Farrell's initial conversation with the Volvo's occupants, he knew that there was an apparent

---

[6] We pass over the defendant's claim that he was not required to activate his turn signal before moving into a left-turn-only lane.

discrepancy between the defendant's claimed residence in Providence and the proffered license's listing of a Cranston address, calling into some question the defendant's true identity.[7] The judge reasoned that this information, "[c]oupled with the fact that the vehicle's registration was not in either of the defendants' names and their nervous demeanors and physical manifestations, [gave Farrell] reasonable suspicion that [the defendant] was lying about his identity." Thus, the judge reasoned, "Farrell was justified in briefly further detaining [the defendant and the passenger] and expanding the scope of his investigation to confirm the identity of the driver."[8]

Farrell was of course justified in returning to his cruiser to try to verify the information he had received. Upon doing so, Farrell learned that the license was valid, the registration

---

[7] There is at least some force to the defendant's suggestion that someone might mention his out-of-State residence by reference to a known city there, i.e., a Chelsea resident, while in another State, might tell someone that he lived in Boston.

[8] The Commonwealth suggests that the calculus should also include Farrell's knowledge that Route 1A is a drug transportation route between Boston and cities to the north. This factor was entitled to little if any weight. Cf. Cordero, 477 Mass. at 244-245. When Farrell approached the Volvo for the second time, he had at most a hunch, but not a reasonable suspicion, that the defendant was engaged in transporting drugs, and the prolongation of the stop cannot be justified on that ground.

was valid, and the Volvo had not been reported stolen.[9]  Farrell then approached the Volvo for a second time.

We agree that Farrell still had reason to question the defendant further in order to ascertain his identity and address so that Farrell could issue him a citation for the traffic violation.  The problem is that Farrell did not do so.  Instead, he proceeded to question the defendant about where the defendant was coming from.  Upon hearing the defendant's reply -- that he was coming from a repair shop where a friend had performed brake work on the Volvo -- Farrell continued to question the defendant about the name of the shop, the address of the shop, and the name of the friend who had performed the work.  Further, believing that the defendant's inability to answer these questions meant he was lying, Farrell proceeded to inspect the Volvo's four wheels, to see if their rims or lug nuts showed any signs of recent work.  Finding no such signs, Farrell resumed the questioning.  Only at this point did Farrell turn back to questions that touched on the defendant's identity by asking,

---

[9] The judge concluded that the totality of the information Farrell initially obtained created a reasonable suspicion that the defendant was furnishing false information.  See G. L. c. 268, § 34A.  Even if the uncertainty initially rose to that level, it dissipated somewhat once Farrell returned to his cruiser and learned these additional facts.

once again, where he lived.  Farrell then saw the displaced carpeting that led to his discovery of the hidden compartment.

Farrell's digression into general investigative questioning of the defendant was constitutionally impermissible.  "Citizens do not expect that police officers handling a routine traffic violation will engage, in the absence of justification, in stalling tactics, obfuscation, strained conversation, or unjustified exit orders, to prolong the seizure in the hope that, sooner or later, the stop might yield up some evidence of an arrestable crime."  Commonwealth v. Gonsalves, 429 Mass. 658, 663 (1999).  See Tavares, 482 Mass. at 703.  Farrell's authority to detain the defendant and his passenger ended when the process of ascertaining the defendant's identity and address to the extent required to write him a traffic citation "reasonably should have been" completed.[10]  Cordero, 477 Mass. at 242, quoting Rodriguez, 575 U.S. at 349.  "The initial stop was therefore unreasonably extended and constituted an illegal seizure."  Tavares, supra at 704.  "As this prolonged detention was unconstitutional, and the evidence at issue flowed

---

[10] Even if Farrell's verification of the validity of the license and registration was relatively expeditious, he did "not [thereby] earn 'bonus time' to conduct additional investigations."  Cordero, 477 Mass. at 242.

therefrom," such evidence "should have been suppressed as the fruit of the poisonous tree." Id. at 706, 708.

We do not suggest that any detour from ascertaining a motorist's identity unreasonably prolongs a stop and thus requires suppression. But that is not what occurred here. And even a detour into more general investigative questioning need not always require suppression. Here, the Commonwealth might have attempted to show that the evidence in question would have been "inevitably discovered" once the trooper returned to questioning the defendant about where he lived and events unfolded from there. See Commonwealth v. O'Connor, 406 Mass. 112, 115-119 (1989) (discussing inevitable discovery rule and Commonwealth's burden of proving its applicability). The Commonwealth did not attempt to do so here, however, nor did the judge make findings relevant to that issue.

This case is unlike Commonwealth v. Feyenord, 445 Mass. 72 (2005), cert. denied, 546 U.S. 1187 (2006), relied upon by the judge. In that case, during a traffic stop, the driver "could not produce a valid driver's license, produced a registration in another person's name, failed to identify himself, and appeared nervous." Id. at 78. Those circumstances "justified an exit order and further inquiry" into whether the driver was "engaged in criminal activity beyond [his] nonpossession of a license and the vehicle's malfunctioning headlight." Id. Here, in

contrast, (1) the defendant produced a license that Farrell ascertained was valid; (2) although the registration was not in the defendant's name, the passenger offered a reasonable explanation (the Volvo belonged to her mother), and Farrell ascertained that the registration was valid and the Volvo had not been reported stolen; and (3) the defendant identified himself.  The fourth factor present in Feyenord was nervousness, but, "in the context of an involuntary police encounter," this factor, alone or combined with other weak indicia of criminal activity, cannot generate reasonable suspicion.  Cordero, 477 Mass. at 243-246 (motorist's nervousness, evasiveness in answering questions about trip's starting point and destination, travel from drug "source city," and record of prior convictions did not combine to create reasonable suspicion).[11]

Farrell would have been justified in extending the encounter in order to resolve the apparent discrepancy between the defendant's stated city of residence and the one shown on the proffered license.  But Farrell had no reasonable suspicion of illegal drug activity, and thus he could not permissibly extend the encounter with questions aimed at pursuing his hunch that such activity was afoot.  As Feyenord itself stated, in

---

[11] Cf. Gonsalves, 429 Mass. at 660, 669 (motorist's extreme nervousness, trembling hands, and heavy breathing did not establish reasonable suspicion justifying exit order).

assessing whether a detention has been unreasonably prolonged, a court must "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." Feyenord, 445 Mass. at 81, quoting United States v. Sharpe, 470 U.S. 675, 686 (1985). Even if Farrell had a reasonable suspicion that the defendant had proffered false identification, Farrell did not diligently pursue questioning to confirm or dispel that suspicion quickly. "This was no 'swiftly developing situation' that prevented verification or disproof of the officer's suspicions regarding the defendant's identity . . . through routine computer or radio checks. . . . Officers' actions must be no more intrusive than necessary at each step to effectuate both the safe conclusion to the traffic stop and the further investigation of the suspicious conduct" (quotations and citations omitted). Commonwealth v. Brown, 75 Mass. App. Ct. 528, 537 (2009). Here, Farrell's actions exceeded the latter limitation.

Relying on Commonwealth v. D'Agostino, 38 Mass. App. Ct. 206, S.C., 421 Mass. 281 (1995), the Commonwealth argues that asking a driver where he is coming from is always permissible in a routine traffic stop. But there the court stated only that such questioning need not be preceded by Miranda warnings. Id. at 208. Nothing in D'Agostino suggests that an officer may pursue such questioning without regard to whether it

unreasonably prolongs a traffic stop.  Rather, questioning during a traffic stop "should pertain to operation of the motor vehicle:  inquiry into the status of the driver as a licensed operator and the registration of the automobile."  Commonwealth v. Bartlett, 41 Mass. App. Ct. 468, 470 (1996).  In Bartlett, questions about "where [the defendant] was coming from and where he was going" were held to constitute "investigatory conversation for which the officer had no lawful basis once he had received a valid license and registration."[12]  Id. at 469, 472.  See Commonwealth v. Harris, 93 Mass. 56, 63 (2018) (noting that in Cordero, "police prolonged the stop by questioning the driver about his travel history that day").

> Order denying motion to
> suppress reversed.

---

[12] The Commonwealth also asks us to consider the unreasonable-delay analysis in Commonwealth v. Martin, 91 Mass. App. Ct. 733 (2017).  But that case did not involve a traffic stop, id. at 734, and thus is not particularly helpful here.