VAUGHAN *vs.* BURFORD.

## *In the matter of proving the last will and testament of* JOHN BURFORD, *deceased.*

THE decedent being ill was asked by L. what he intended to do with his money, and replied he would leave a certain sum to his sister. L. withdrew from the room, wrote a short will, signed the decedent's name, and together with C., signed the paper as witness, returned and read it aloud to the decedent, who thereupon signed his name. The whole paper was read, inclusive of the names of the attesting witnesses, and both the reading and the signature by the decedent were in the presence of the witnesses—*Held,* that the instrument was validly executed as a last will and testament.

The witnesses may be said to have signed at the decedent's request, when their names having been read over to him and seen by him, he signed the document. The reading aloud followed by the act of signature, constituted a testamentary declaration.

The particular order of the several requisites to the valid execution of a testament is not at all material, provided they be done at the same time and as part of the same transaction. What is the same time and the same transaction is the subject of judicial determination, in each particular case, depending upon the facts, and incapable of being governed by any general rule.

Whether a paper is testamentary or not depends upon its provisions—if they are testamentary in their character and look to dispositions contingent on death, they determine the nature of the act to be testamentary. Where the paper " *bequeaths*" after the testator's " *death,*" the words employed evince very clearly the *animus testandi.*

JOHN M. STEARNS, *for Legatee.*
P. B. SWEENEY, *Public Administrator in Person.*

WESSELL S. SMITH, *for Contestants.*

Alfred Vaughan was appointed administrator, as in case of intestacy, before it was known that any paper in the nature of a will was in existence, and he now appears as such administrator to claim the property of the deceased, and,

with his wife Mary, the only next of kin in this country, to oppose the probate of said paper as a will.

There is no dispute as to the facts; they are, no doubt, stated correctly by the witnesses, and from these facts we contend.

I. The paper produced is not the will of John Burford. It was not intended by him as a will, nor was it executed by him as such. Lewis wrote the paper, he says, as a note or memorandum of a conversation just had with the deceased, and to avoid an apprehended difficulty. It was done without the request of Burford, and it clearly appears that Lewis had no idea that he was drawing a will, nor did Burford, when he signed it, suppose he was executing a will: on the contrary, the object of Lewis in drawing the paper, is fully explained by him—he asked the sick man what he was going to do with his money; he answered he would leave $230 to Sarah; this was all that passed. " *I then went into an adjoining room, and took a note of what he told me.*" There is surely nothing in all this, to show that Burford supposed he was executing a will.

II. The paper was not executed with the formalities required. 2 *R. S. 3d Ed.* 124 (63) § 32, *and Cases.*

1. It was not declared by John Burford to be his last will and testament as required.

All the provisions of the statute, in relation to the execution of wills must be *strictly* complied with; but, though it need not be literal, it must be substantial; thus there must be a communication from the testator to the witnesses, indicating his intention to give effect to the instrument as his will.

*Remsen* v. *Brinckerhoff*, 26 *Wen.* 326. And this declaration must be distinct and unequivocal from the testator, that *he understands the instrument to be his will, that he executes it as such, and requests the witnesses to attest it.*

*Rutherford* v. *Rutherford*, 1 *Den.* 33. The witnesses must be informed at the time, and by the testator, or in his presence, and with his assent, and have a knowledge of all the

facts necessary to a due execution and publication of the will they are called on to attest. The testator must, in some manner, communicate to the attesting witnesses, *at the time* they are called on to sign, the information that the instrument then present is of a testamentary character, and that *he then recognizes it as his will, and intends to give it effect as such;* there must be *some assertion* or *some clear assent,* in words or signs, *and the declaration must be unequivocal.* The witnesses must not only know the fact, that the instrument they attest is a will, but *they must know it from the testator, that he understands it, and intends to give it effect as his will, and this too at the time of execution. Lewis* v. *Lewis,* 1 *Kernan,* 220, 5, 6, 7.

Now in this case, there was nothing of the kind; there was nothing said or done by Burford, at the time he signed the paper, from which the witnesses could infer that he understood it as a will, intended to execute it as such, or that the witnesses attested it as a will.

As to the conversation with Lewis. It was previous to the signing of the paper, and what Burford said then, was in reply to a question asked him, and had no reference to a will. He was at the time very sick with the cholera, and about going to the hospital; his friend Lewis visited him at his request; who, knowing he had some money, and wishing to ascertain where it was, that it might be applied to his use, if needed, during his sickness, asked him "what he was going to do with his money;" he said "he would leave $230 to Sarah;" this was all the conversation; and the most that can be said of it is, that it was a mere expression of intention, and certainly had no reference to making a will at that time; he expressed no wish to have a will drawn, and what the witness did was of his own volition; he wrote the paper, according to his own story, without any idea he was writing a will, and simply as a note or memorandum of the conversation, and he requested the other witness to sign it, not as a will, but because he wanted some one else to know the facts; for he was fearful there might be some difficulty in getting the money

out of the bank, in case Burford needed it while in the hospital.

But it will be said, that this paper was read over to Burford in the presence and hearing of the witnesses, and that he signed his name to it without dissent; that, the paper containing testamentary words, this was a sufficient declaration. Now, we submit that this does not amount to such a declaration as the statute requires. The words are, " I do bequeath," these are not sufficient of themselves; there was nothing either said or done by Burford, nor any word or sign used, by which the witnesses could or did understand from him that the instrument to which he affixed his name was his will, or that he intended to execute it as such.—*Same Cases.*

And the witnesses both say, there was nothing said or done by Burford (except reading the paper and signing) which indicated what the paper was, and they were not aware at the time, they were witnessing a will.

III. There was no request, either express or implied, by John Burford to the witnesses, that they should attest the will as witnesses.

It is equally important to the due execution of a will, that this provision of the statute be substantially complied with.— *Same Cases.*

Here the persons signed their names before Burford saw the paper, or even knew it was written; they signed their names without any idea they were attesting a will, and there was no communication by Burford to them, from which it can be inferred that he recognized their signatures as the attestation of his will, or assented to it, and therefore no request can be inferred.

IV. But if the Surrogate should decide to give this paper effect as a will, then we insist that this contestant Alfred Vaughan should be appointed administrator, with the will annexed. Because,

1. He is the administrator, duly appointed, and as such entitled to the property not bequeathed in the so-called will.

2. His wife is the nearest of kin in this country, and as such, her husband is entitled to administration in her right. 2 *R. S.* 75, § 33 (32.)

V. And we ask therefore that it be decreed:

1. That the paper produced was not properly executed as a will, and that John Burford died intestate.

2. If the paper is declared to be a will, and properly executed, then that administration, with the will annexed, be granted to Alfred Vaughan, in right of his wife, as next of kin.

3. That the Public Administrator be ordered to deliver the property in his hands, to him as such administrator.

VI. These contestants are, at all events, entitled to their costs and expenses out of the estate.

THE SURROGATE. The instrument propounded for proof in this case, is in the following words:

NEW YORK, *September* 15*th*, 1854.

John Burford has 230 dollars in the Manhattan Savings Bank, Broadway. I do bequeath 230 dollars to Sarah Burford at my death.

JOHN BURFORD.

Witnesses.    THOMAS LEWIS.
              CATHERINE SHELLEY.

John Burford has 24 dollars in the Emigrants' Industrial Savings Bank, Chambers street, New York.

JOHN BURFORD.

Witnesses.    THOMAS LEWIS.
              CATHERINE SHELLEY.

This instrument, it appears, was executed under the following circumstances. Burford was sick with the cholera, and sent for Mr. Lewis. On his arrival, Mr. Lewis, in the presence of Catherine Shelley, asked the decedent " what he was going to do with his money?" He said " he would leave two hundred and thirty dollars to Sarah Burford, his sister." Mr. Lewis repaired to an adjoining room, and drew up the

paper in question, read it to Catherine Shelley, and when they both had signed it as witnesses, took it back into the decedent's room and read the paper aloud to him. Mr. Lewis says: " I read the paper to him. I told him I had signed his name, and he said he could write his own name. The name, as I had written it, was erased, and he wrote his own name himself." . . . " When I read it over to him, I read the names of the witnesses signed to it." . . . . . " He had expressed more than once to me that he should leave his property to Sarah Burford."

It thus appears that the instrument conforms to the intention of the decedent, as previously expressed, and as stated at the time in the presence of the witnesses, that it was read aloud to him in the presence of the witnesses and signed by him in their presence. The names of the witnesses were read in connection with the other portion of the paper, and he must have seen them when he signed it. These circumstances seem to me to satisfy the statute in spirit and substance. The witnesses may be said to have signed at the decedent's request, when their names having been read over to him and seen by him, he set his own signature to the document. The reading aloud before he signed, followed by the act of signature, constituted a testamentary declaration. It was openly declared what the contents were, and it is impossible to read the paper without observing its testamentary character. The entire transaction was public and open from beginning to end, every person present knew what was going on, and that all present were likewise cognizant. This satisfies the law, which looks to substance and not to form. Mere form, indeed, is not nearly so satisfactory, for it gives us only a technical proof that the testator declared the instrument to be his will, and requested the witnesses to attest it; whereas we have in the evidence before us, the most unequivocal testimony that the attestation was with his consent and full approbation, and that the nature of the transaction was well understood by every body present. The intention of the decedent was most clear; that he desired to carry it out, was manifested by the act of signing after the

reading of the paper, by which act he ratified and confirmed all that had been done, making, as it were, the acts of others, so far as his request was necessary, receive an *ex post facto* confirmation. The particular order of the several requisites to the valid execution of a testament is not at all material, provided they are done at the same time, that is, as part of the same transaction. What is the same time and the same transaction, is the subject of judicial determination in each particular case, depending upon the facts, and incapable of being governed by any general rule. In the present case, there was no time intervening between any of the ceremonies; the act was entire and one; the parts were strictly consecutive; their order, which came first and which came last, is entirely unimportant. There being no deficiency in the proof, the will must be admitted to probate, unless there be something in the objection that the deceased did not design the instrument to be his will. Whether a paper is a will or not depends upon its provisions; if they are testamentary in their character, and look to dispositions contingent on death, they determine the nature of the act to be testamentary. The writing now before me, in terms " bequeaths" money after the testator's " death." No words could be employed evincing more definitely the *animus testandi.* It is impossible to hear them read, without knowing they signify a testamentary act. The paper drawn by the witness Lewis, was not a mere note or memorandum of a conversation, but was descriptive of a present act. The testator says, " I bequeath," and signs the document. Had he declared it formally to be his last will and testament, the technical proof would have been more perfect, but the interpretation of the instrument would not have been aided. That depends on the writing, and if a bequest after death is not of the very essence of a will, and does not determine a writing to be a will, it is difficult to say what does. I think, upon the whole, the proponents have established their case, and there must be sentence of due proof. No executor being named, administration with the will annexed may pass to the next of kin, if it be not claimed by the legatee, after citation.