[No. 6,560.—Department Two.]

# IN THE MATTER OF THE ESTATE OF CHARLES S. JOHNSON, DECEASED.

ESTATES OF DECEASED PERSONS—INSANITY—DRUNKENNESS.—It cannot be said, as a rule of law, that because a man is a drunkard, therefore he is of unsound mind.

ID.—ID.—WILL.—RES JUDICATA—CONSTRUCTION OF STATUTE.—The judicial determination that a person is of unsound mind, under §40 of the Civil Code as it existed in 1877, is only *prima facie* evidence of his incapacity to make a will.

ID.—WILL—SUBSCRIBING WITNESS.—A testator signed his will in the presence of a subscribing witness, and the witness then signed it at his request; the scrivener, being present, then asked the testator if the paper was his will, to which he replied, "Yes," in the presence of the witness. *Held*, that the transaction was a sufficient declaration to the witness that the paper was the will of the testator.

APPEAL from an order in the Probate Court for the County of San Mateo.   BICKNELL, J.

On the trial of the petition for the probate of the will, Pardon B. Johnson, the father and heir at law of the deceased, contested the petition, and appealed from the order.

*Fox & Kellogg*, for Appellant.

The English Statute of Wills is like our own in respect to the making or acknowledging of the signature of the testator in the presence of the witnesses.

"By the late English statutes, it is required that the signature of the testator shall be made or acknowledged in the presence of the witnesses." (1 Redfield on Wills, 283, clause 5.)

"The result of the decisions under the existing English statutes seems to be, that the testator must sign or acknowledge his signature *before either of the witnesses subscribe*, and that a subsequent acknowledgment will be of no avail." (1 Redfield on Wills, 285, clause 6—citing a large number of cases in note 13.)

The reason for this requirement is found in the principle that every attesting witness to a will must *first be made competent to become such*, by the act of the testator, and must know that he is becoming such when he affixes his name to the instrument.

By § 40 of the Civil Code, a person situate as this decedent was, was authorized, until the last session of the Legislature, to make a will, "if actually restored to capacity," although such restoration had not been judicially determined, and although he could not make a contract, deed, or other conveyance, until such judicial determination. But this provision was inconsistent with both the Code of Civil Procedure and the Statute of Wills, and therefore, upon this subject, the Code of Civil Procedure and the Statute of Wills must prevail, as against § 40. (Pol. Code, §§ 4480–4484.)

*Fox & Ross*, for Respondent.

All that is implied by the publication of a will is that the witnesses should be made aware, by some act or word or acquiescence of the testator, that he recognizes the instrument as his will, and as such, desires the witnesses to attest its execution. (*Hume* v. *Case*, 5 N. Y. Sur. 307; *Van Hooser* v. *Van Hooser*, 5 id. 365.)

MYRICK, J.:

This is an appeal from an order of the Court below admitting to probate the will of the deceased, and from the order denying motion for new trial.

1. The question as to the soundness or unsoundness of mind of the deceased was a question of fact upon which there was a conflict of evidence. There was *some* evidence that, at the time of the execution of the proposed will, he was of sound and disposing mind, notwithstanding other evidence tending to show that for twenty years he had been addicted to the excessive use of intoxicating liquors, and had been for years, as one witness stated, "a noted drunkard." Upon that evidence the Court below found that he was of sound and disposing mind, and there being a substantial conflict in the evidence, it is not our province to disturb the finding. We cannot say, as a rule of law, that because a man is a drunkard, therefore he is of unsound mind. It is a question of fact for the jury or Court below to determine whether the inebriety has had the effect of rendering his mind unsound, either permanently or temporarily, covering the time of the execution of the alleged will.

2. At the time of the execution of the proposed will, December 17th, 1877, the deceased was under guardianship as an incompetent person, under §§ 1763 and following, Code of Civil Procedure. It is claimed by the appellant, who contested the probate of the will in the Court below, that the action of the Probate Court in adjudging him to be a fit subject for guardianship had the effect in law of conclusively determining that he was, during the guardianship, incompetent to make a will. Section 40 of the Civil Code, as then in force, read as follows:

"After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor delegate any power, nor waive any right, until his restoration to capacity is judicially determined. But if actually restored to capacity, he may make a will, though his restoration is not thus determined."

This section was amended in 1878, but the amendment does not apply to this case. We are of opinion that, under the above section as it read in 1877, the adjudication of incompetency was, as to lack of testamentary capacity, *prima facie* evidence only, and that the Court below was correct in hearing evidence as to whether the ward was, at the time of the execution of the proposed will, actually restored to capacity.

3. There is some indefiniteness as to the witnessing of the will; viz., as to whether the witness Wilcox was informed, *before* he wrote his name as a witness, that he was witnessing a will. The other witness knew from the deceased that the paper was being executed as a will, and he was of opinion that Wilcox was possessed of the same knowledge. Wilcox, however, states, in substance, that deceased came to his place of business and asked him to go and witness his signature; that they went together to the office of the scrivener, where the paper had been prepared, and the deceased signed the paper, and asked the witnesses to witness it, and they signed as witnesses; that thereupon the scrivener asked deceased if the paper was his will, and he replied, "Yes"; that the whole time occupied in the transaction at the office of the scrivener did not exceed five minutes. We are asked to hold that this state of facts does not show a proper execution of a will, in that the witness Wilcox did not understand, at the moment he wrote his

name, that he was witnessing the execution of the paper as and for a will. We are of opinion that the whole interview, as had between the deceased, the witnesses, and the scrivener, was one transaction; and that, as a part of that transaction, the deceased did declare to the witnesses that the paper was his will. Before the parties separated, and while the paper was there before them, and was under consideration—indeed, before any act had taken place, after the signing—the declaration was made. We think this was a substantial compliance with the statute. (*Vaughan* v. *Burford*, 3 Bradf. 78; *Jackson* v. *Jackson*, 39 N. Y. 153.)

Judgment and order affirmed.

MORRISON, C. J., and SHARPSTEIN, J., concurred.