## In re STICKNEY'S WILL.

### BULLARD v. STICKNEY et al.

(Supreme Court, Appellate Division, Fourth Department.　June 18, 1898.)

REPUBLISHING REVOKED WILL.

> 2 Rev. St. c. 6, tit. 2, § 40, provides that every will shall be subscribed by the testator in the presence of attesting witnesses, or shall be acknowledged by him to have been so made to each of such witnesses, and at the time of such subscription or acknowledgment the testator shall declare the instrument subscribed to be his last will and testament.　Section 42 provides that no written will, or any part thereof, shall be revoked or altered, except by another will, or writing of the testator, declaring such revocation or alteration, executed with the same formalities as the will itself, unless such will be destroyed with the intent of revoking the same.　Section 53 declares that if, after the making of any will, the testator shall duly execute a second will, the destruction, cancellation, or revocation of that will shall not revive the first, unless such was the intention of the testator, or unless, after such revocation, he shall duly republish his first will.　Held, that, in order to republish a will revoked by the terms of a subsequent one duly executed, but destroyed by the testator, it must be re-executed as provided by section 40, and that such republication is not accomplished by the testator's parol declaration to persons not subscribing witnesses to it, and who did not subscribe it as witnesses, that he desires the first will to stand as his last will, and that it is his last will.
>
> Adams, J., dissenting.

Appeal from surrogate's court, Genesee county.

Exceptions by Lorenzo Stickney and others to the probate of the last will and testament of Jonas Stickney, deceased, by William A. Bullard, executor.　From a decree of the surrogate court admitting the will to probate, contestants appeal.　Reversed.

May 12, 1893, Jonas Stickney, of the village of Corfu, N. Y., duly executed his last will and testament, by which he bequeathed $3,000 to Emma McClurg, not a relative, $1,000 to Alonzo Stickney, a brother, $1,000 to McCall Stickney, a brother, and the residue of his estate he devised and bequeathed to his "nephews and nieces, share and share alike."　By this will, William A. Bullard was nominated as executor and all former wills revoked.　It was witnessed by Joseph W. Safford, who drew it, and by Joseph H. Thurston, both of Corfu, N. Y.　The testator was a bachelor, and when the will was executed was 73 years of age, and then resided, and had for more than a year resided, with Elmer McClurg and his wife, Emma, both aged about 30 years, who were not related to the testator.　In February, 1894, the testator conveyed the house and lot, worth about $2,000, where he and the McClurgs resided, to Mrs. McClurg, where he and the McClurgs continued to reside until March 19, 1897, when he died, at the age of 77 years, leaving, him surviving, three brothers and twelve nephews and nieces, the children of deceased brothers and sisters, his heirs and next of kin.　He left no realty, but left personalty of the value of about $7,000.　In May, 1897, the executor nominated in the will of May 12, 1893, filed it for probate.　The heirs and next of kin filed objections, alleging that the testator was incompetent to make a will, that it was not executed as prescribed by the statute, and was null and void.　On the trial

in the surrogate's court the evidence was confined to the question whether the·
will of May 12, 1893, which was revoked by a subsequent will executed in·
1895, had been duly republished. .Joseph W. Safford, the draftsman of the·
will of May 12, 1893, testified that in the summer of 1895 he drafted for the
testator a second will, in the forenoon of the day when it was prepared;
that it was duly executed by the testator, and witnessed by himself and
Martha Lincoln. By this will the testator bequeathed to his brother Alonzo··
Stickney $2,000, and devised and bequeathed the remainder of his estate to·
his nephews and nieces, share and share alike, appointed John Lincoln executor
thereof, and by it revoked all former wills made. Martha Lincoln testified'
that the testator duly executed this will, and that she subscribed it as a witness.
This will the testator delivered to Joseph W. Safford, the draftsman and one·
of the witnesses, who sealed it in an envelope. In the afternoon of the same·
day the testator called on the draftsman, and carried away the will. Joseph·
W. Safford, the draftsman, testified that when the testator came for the will
Elmer McClurg, the husband of Emma McClurg, was with him, but Mr.:
McClurg testified that he did not go with the testator. However, this is not'
very important. Mr. McClurg testified that after the testator returned to·
their residence with the will he burned it, and said, referring to the will of·
May 12, 1893, that Dr. Hutchins had his will, which was the one he wanted.
At this time the testator was ill, and in the latter part of the day Dr. H. S.
Hutchins, the testator's physician, called on him professionally. Dr. Hutchins·
testified that at this interview the testator told him that he had made a will.
on that day, and, after thinking it over, did not like it, had destroyed it,.
and that he would keep the old will, referring to the one of May 12, 1893,.
which, at that time, was in the safe of Dr. Hutchins for safe-keeping. About'
April 1, 1896, the testator wrote Dr. Hutchins to deliver the will in his pos-
session to W. Harris Day, who presented the order to Dr. Hutchins, received
the will, and carried it to the residence of the testator. Mr. Day testified.
that the testator read the will, and said that it was just as he wanted it, and di-·
rected Mr. Day to return it to Dr. Hutchins, which was done on the same day
or on the next day, by whom it was kept in a sealed envelope until after the·
death of the testator. Elmer McClurg testified that he was present at the
interview between the testator and Mr. Day, and corroborates the testimony·
of the latter. The foregoing is the only evidence given in respect to the re-
publication of the will of May 12, 1893, and it was held by the surrogate's-
court that it was duly republished according to the statute, and was admitted
to probate.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN,.
and WARD, JJ.

F. W. Ballard, for appellants.

Eugene W. Harrington, for respondent.

FOLLETT, J. The question presented by this appeal is whether a·
will expressly revoked by the terms of a subsequent one, duly ex-
ecuted, but destroyed by the testator, is republished, and becomes a·
valid will, by the testator's declaration to persons not the subscribing·
witnesses to it, and who do not subscribe it as witnesses, that he
desires the first will to stand as his last will, and that it is his last
will. The diligence of the learned surrogate and of the counsel·
for the litigants has failed to find a case in this state since the adop-
tion of the Revised Statutes determining this question, and I have·
failed to find one. The following are the sections of the statute·
of this state relating to the execution, revocation, and republishing·
of wills, which sections remain as they were reported in 1828 by the··
revisers, and enacted as part of the Revised Statutes of this state·
(see 2 Rev. St. c. 6, tit. 2, pp. 63, 64, 66; and 2 Rev. St. [9th Ed.] pp..
1877, 1878, 1880):

"Sec. 40. Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner: (1) It shall be subscribed by the testator at the end of the will; (2) such subscription shall be made by the testator, in the presence of each of the attesting witnesses, or shall be acknowledged by him, to have been so made, to each of the attesting witnesses; (3) the testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed, to be his last will and testament; (4) there shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator."

"Sec. 42. No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator, and the fact of such injury or destruction, shall be proved by at least two witnesses."

"Sec. 53. If, after the making of any will, the testator shall duly make and execute a second will, the destruction, canceling or revocation of such second will, shall not revive the first will, unless it appear by the terms of such revocation, that it was his intention to revive and give effect to his first will; or unless after such destruction, canceling or revocation, he shall duly republish his first will."

The learned surrogate in his opinion demonstrates, by the most satisfactory reasons, that the word "publication," when used in connection with the execution of wills, denotes the act prescribed by the third subdivision of section 40, above quoted, which conclusion he amply supports by reference to the following cases: Brinckerhoof v. Remsen, 8 Paige, 488; Lewis v. Lewis, 11 N. Y. 220; Trustees v. Calhoun, 25 N. Y. 422; Tarrant v. Ware, Id. 425; Baskin v. Baskin, 36 N. Y. 416; In re Phillips, 98 N. Y. 267; Nipper v. Groesbeck, 22 Barb. 670. In all of these cases, however, the courts were speaking of the publication or declaration made by testators to persons who became subscribing witnesses to the wills, and not in reference to publications or declarations made by testators to persons who did not become subscribing witnesses to the wills.

I apprehend that if a testator should declare, publish, or acknowledge to all the world, except to the subscribing witnesses, that a particular instrument was his last will and testament, and should neglect so to declare, acknowledge, or publish to the persons who became the subscribing witnesses, the will would not be well executed, within the statute. The testator must not only publish or declare the instrument to be his last will, but it must be declared to the persons who become the subscribing witnesses thereto. The word "republish" means to publish again that which has been before published, and, as used in the fifty-third section of the statute, denotes that the act must be done in the same manner, and be authenticated in the same way, as required by section 40; that is, it must be declared to be the last will of the testator, in the presence of persons who then become subscribing witnesses to the republished will, and so attest the fact, or, perhaps, if it is republished in the presence of the original subscribing witnesses, it may not be necessary for them to subscribe the will anew as witnesses, for the rewriting of their

signatures would seem to be a useless formality.    But the mere ac-
knowledgment or publication by a testator of a will which has been
revoked, to persons who were not the original subscribing witnesses,
and who do not then subscribe as witnesses the republished will, is
not a compliance with the fifty-third section of the statute.

In Jackson v. Potter, 9 Johns. 312, the testator (James Rogers),
after making several specific devises, devised the remainder of his
realty to two of his sons.    Subsequently he acquired 100 acres of
land, and afterwards inclosed his will in a letter to Susannah Case,
writing her as follows:

"Mrs. Case: Inclosed is my will, which you are requested to keep, and,
when it becomes proper to open the same, it must be done in the presence of
two of the executors and eight other persons.                James Rogers."

The letter and the will were delivered to Mrs. Case, who retained
them.    After this the testator told one of the executors named in
the will:

"I have made my will, and deposited it with Susannah Case, and have ap-
pointed you one of my executors, and wish you to accept the trust. You will
find inclosed in the letter a memorandum in writing directing the manner of
proceeding."

The testator also said in his last sickness that he had made a dis-
position of all his estate by will, and had deposited the will with
Susannah Case.    This will was executed in 1805, and the testator
died in 1810, long before the adoption of the Revised Statutes, and
when a will did not carry subsequently acquired real estate.    The
residuary devisees claimed the 100 acre farm acquired after the ex-
ecution of the will, asserting that the three declarations made by
the testator after he acquired the farm amounted to a republication
of the will.    But it was held not to be a valid republication, the
court saying:

"And it is equally well settled that the republication of the will, so as to
affect the after-acquired lands, must be made with like solemnity as the exe-
cution of the original will."

Since the adoption of the Revised Statutes, the question as to how
a revoked will must be republished, in order to re-establish it, has not
been passed on in any case where the question was necessarily in-
volved, but dicta in respect to the question are found in several re-
ported cases.

In Simmons v. Simmons, 26 Barb. 68, the court said:

"Here, by legislative and simultaneous construction, a second will, 'duly
made and executed' (without any clause declaring the former one revoked),
is shown to have put the first so utterly out of vital existence that it needs
either republication (tantamount to an entirely new execution) or an express
revivor by the terms of the writing revoking the second."

This judgment was reversed (24 How. Prac. 611), but the grounds
of reversal are not disclosed, as the opinion of the court of appeals
has not been reported.

In Re Forbes' Will (Surr.) 24 N. Y. Supp. 841, the testator made
two wills, but the last one was not found.    In speaking of the effect
of the last will upon the first, the surrogate said that the first will

was revoked by the latter, and had no legal existence, and that it required a republication, executed with all the solemnities and exactness required by law, to bring it into existence.

In Proctor v. Clarke, 3 Redf. Sur. 445, the surrogate held that a will executed by an unmarried woman, which was revoked by her subsequent marriage, was not revived by a codicil duly executed after her marriage, and it was said that "to re-establish the instrument of August 25, 1873, as a will, there must be a re-execution or a new execution of it. The same formalities must be complied with as in the first instance." This case was reversed (16 Hun, 559), and the judgment of the general term affirmed by the court of appeals (77 N. Y. 369), where it was held that the execution of a codicil recognizes the validity of a revoked will, and operates as a republication and re-establishment of the will.

In Re Simpson, 56 How. Prac. 125, the surrogate of Delaware county said, by way of argument, that a revoked will might be republished by the parol declaration of the testator that it was his will, made in the presence of two witnesses, who were not witnesses to the original will, and who did not subscribe the will as witnesses when the declaration was made. The surrogate had held that the original will had not been revoked, and the remark referred to was obiter.

The cases referred to which have arisen since the Revised Statutes cannot be regarded as authorities, but simply as expressions of the views of individual judges upon the question. Many cases have arisen in England and in several of the United States, but under statutes different from our own, and it is necessary to say only that there is a general agreement that the act of republishing a revoked will must be attended by the same solemnities as are required to establish an original will. In case a parol declaration, made to persons who do not become subscribing witnesses, is sufficient to establish the due execution of a will, a like declaration is sufficient to establish a republication of a revoked will. But, in jurisdictions where the will must be published to persons who subscribe as witnesses, the same formalities are required to republish a revoked will. The design of the statute prescribing that certain formalities shall be observed in the execution of wills was for the prevention of frauds in the disposition of estates by will, and I think no good reason can be given why the same formalities should not be required for the republication of a revoked will, as the opportunities for fraud are the same in both cases.

The decree of the surrogate's court should be reversed, with costs, and that court directed to enter a decree refusing to probate the will. All concur, except ADAMS, J., dissenting.