(Surrogate's Court, New York County. December, 1898.)

1. WILLS—LOST—EXECUTION.
    The witnesses to a lost will testified that the testator said it was his will, asked them to sign it, pointed out where they should sign, and they did sign, in his and each other's presence. One testified the testator signed. after both the witnesses, and the other that the testator did not sign in his presence, and witness did not see his signature. There was no proof that the testator acknowledged the subscription to either of them. *Held*, that the due execution of the will was not established.

2. SAME—PROOF OF CONTENTS.
    Four witnesses testified to having, three years before, read a will sought to be probated, though lost. Three testified substantially that the devise was to the testator's mother's heirs; and the fourth, that it was to his mother "and" her heirs. The witnesses could not identify the signature. The testator was a lawyer, and was his mother's only heir, and she was dead when the will was purported to have been executed, and a construction of the will in favor of her heirs, he being dead, would exclude his father, who was his right heir. If the will testified to by witnesses had been made before his mother's death, it was not the one offered for probate. *Held*, that the provisions of the will were not clearly or distinctly proved by two credible witnesses, as required by Code Civ. Proc. § 1865.

Application for the probate of the last will of Augustus M. Purdy, deceased. Application denied.

Robert A. B. Dayton, for petitioner.
Deyo, Duer & Bauerdorf, for objectors.

ARNOLD, S. This application is made, under the provisions of section 2621 of the Code of Civil Procedure, for the probate of a will alleged to have been made by the decedent in the spring of 1892, and which, it is claimed by the proponent, was in existence at testator's death, and has since disappeared. Only two persons were exam-

ined as to the execution of the will, and these were the alleged subscribing witnesses thereto. They testify that the testator produced to them a paper, which he said was his will, and asked them to become witnesses to it, and pointed out the place where they should sign their names, and they did so sign, in his presence, and in the presence of each other. One of them says that the testator signed the will after both witnesses had signed. The other says that the testator did not sign in his presence, and that he did not see the latter's signature upon the instrument. There is no proof of any acknowledgment by the testator to the witnesses, or either of them, of any subscription of the will by him.

It has been repeatedly held that the subscription of the testator's signature at the end of the will must be made or acknowledged by him to have been subscribed in the presence of at least two witnesses, and this should precede the signing of their names as such witnesses, and that they should see the signature. The declaration by the testator to the witnesses that the paper is his will does not dispense with these requirements. Lewis v. Lewis, 11 N. Y. 220; Jackson v. Jackson, 39 N. Y. 153; Sisters of Charity v. Kelly, 67 N. Y. 409; Dack v. Dack, 84 N. Y. 665; In re Phillips' Will, 98 N. Y. 273; In re Hunt's Will, 110 N. Y. 278, 18 N. E. 106; In re Mackay's Will, 110 N. Y. 611, 18 N. E. 433; In re Laudy's Will, 148 N. Y. 403, 42 N. E. 1061; Mitchell v. Mitchell, 16 Hun, 97, affirmed 77 N. Y. 596; Rutherford v. Rutherford, 1 Denio, 33; Rugg v. Rugg, 21 Hun, 383. It is true that where the subscribing witnesses to a will, through failure to recollect what transpired, or for any other reason, fail to give testimony which will of itself authorize the admission of the instrument to probate, it may, nevertheless, be so admitted on proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action. Code Civ. Proc. § 2620; In re Kellum, 52 N. Y. 519; Rugg v. Rugg, 83 N. Y. 592; In re Nelson's Will, 141 N. Y. 152, 36 N. E. 3.

The presence of a full attestation clause subscribed by the witnesses, where they have no distinct recollection as to the transaction, has been often held to be sufficient, under the circumstances of the case, to justify the admission of a will to probate; and the fact that a lawyer or other person experienced in supervising the execution of wills was present when the will under consideration was executed has been given great weight in determining whether the witnesses have been mistaken in their recollection, and even where they have testified positively that the statutory requirements have not been complied with. As the alleged will in this case could not be produced, no testimony as to the genuineness of any handwriting thereon, which purported to be that of the testator, could be or was furnished. Neither of the subscribing witnesses had any familiarity with such handwriting, nor has any witness been examined who has claimed such familiarity; and there is no testimony which establishes the presence or contents of any attestation clause on the instrument. It appears that the decedent was a lawyer, and that he had practiced as such in this state for several

years; but I find no case which goes to the length of holding that presumptions arise from that fact alone sufficient to justify the admission of a will to probate in the face of testimony of the subscribing witnesses against due execution, the absence of proof that there was a proper attestation clause, and of other circumstances from which such execution can be inferred. The due execution of the will has not been established to my satisfaction.

Even had such due execution been proved, I do not think the proponents have met the requirements of section 1865 of the Code of Civil Procedure, and which are made applicable to proceedings in this court under section 2621. The alleged subscribing witnesses did not read the will, or hear it read, or have any information as to its contents. The existence of the instrument at the time of the testator's decease, and the provisions of the will, have been attempted to be proved by the testimony of persons who had no knowledge of, and were in no manner connected or concerned with, its execution. Three witnesses swear that they read a paper purporting to be the last will and testament of the decedent a short time before the latter's death. They, together with a fourth witness, testify that they also saw and read the same paper shortly after such decease. This paper, it is testified, was in the possession of the decedent's father (who died before the commencement of this proceeding) both before and after the death of decedent. Another witness testifies that he received from decedent for safe-keeping, some weeks before the latter's decease, an envelope indorsed, "Last will and testament of Augustus M. Purdy," containing a paper which witness read, and which purported to be a will; but he was unable to state the contents thereof, but says he delivered it to decedent's father, but it does not appear that this was with decedent's knowledge or assent. He also says that decedent made several attempts to dictate a will to him, but never succeeded in finishing any. The four witnesses who testified to seeing and reading the alleged will undertook to give their recollection of its provisions. The first said it left all decedent's real and personal property to his "mother's heirs and assigns, forever." On cross-examination, the witness said the words were to "Irene Purdy's heirs and assigns, forever." The next witness stated that the bequest was to decedent's "dear beloved mother, Irene B. Purdy, and her heirs and assigns, forever, at law." On cross-examination, witness said that the language used was "I bequeath all my real and personal property to my dear beloved mother, Irene B. Purdy, or her heirs or assigns, forever, at law." The third witness swears that bequest read to "my mother's heirs at law." The fourth witness testified that the bequest was to his "dear beloved mother's heirs at law, Irene B. Purdy's dear beloved mother's heirs at law, forever." Each of these witnesses testifies that the signature "Augustus M. Purdy" was at the end of the will, but they could not swear that it was in his handwriting. One swears that the name of William Lee was in the will below the signature "Augustus M. Purdy." Four witnesses say the name of Thomas Lynch was in the last part of the will, and one said that Lynch was appointed executor. It is sought to

identify this paper as the one executed by decedent in the previous spring by the fact that the name of William Lee was on it, the witness of that name having sworn that he witnessed but one will for decedent.　It is in evidence that Irene B. Purdy, the mother of the decedent, died several months before the time of the alleged execution of the lost will, and that decedent was her only heir at law. The decedent owned no real estate, and his personal estate amounted to about $11,100.　His father applied for, and received, on or about July 19, 1892, letters of administration upon his estate, upon the allegation that he died intestate, and such letters were not attacked during the administrator's life.　He died February 7, 1894.　Irene B. Purdy left, her surviving (besides her son, the decedent), her mother (since dead), a brother, two sisters, two nephews, and two nieces, children of a deceased sister, all of whom survived the decedent.　The petition herein is presented by the brother, and he claims that the provision of the will was that the decedent's real and personal estate should go to the heirs at law of Irene B. Purdy, and that he and the sisters, nephews, and nieces of Mrs. Purdy are such heirs, and the persons entitled to the property.

It is required by section 1865 of the Code of Civil Procedure, made applicable to this court by section 2621, that the provisions of a will alleged to have been lost shall be clearly and distinctly proved by at least two credible witnesses, except that a correct copy or draft of the will shall be equivalent to one witness.　The four witnesses who assumed to state the contents of the will sought to be probated here were all closely related, and members of one family and household, and there was nothing in their life, surroundings, or experience, so far as disclosed, showing or from which it can be inferred that they had any familiarity with the method of execution of wills, or with testamentary provisions.　They were not themselves interested in any manner in the disposition of the decedent's estate. They made no memorandum of the provisions of the alleged will, and claimed to rely solely upon their recollection of what they read or heard read very nearly three years before they were examined in this proceeding.　They did not impress me unfavorably when on the stand, but it seemed to me that the fact which was most clearly in their minds was that the decedent's father was not mentioned in the paper which they read, and that the name of the decedent's mother was mentioned therein.　One of them, who gave her testimony with much intelligence, stated her recollection to be that the paper devised and bequeathed all the decedent's real and personal estate to his beloved mother and her heirs and assigns, and upon cross-examination repeated the same testimony, except that she put the bequest in the alternative, as being to the mother or her heirs and assigns.　Now, notwithstanding the other three witnesses swear substantially that the devise and bequest was to the heirs at law of the decedent's mother, I think that, upon the question as to whether or not their testimony should be relied on in preference to that of the other witness, it must be taken into consideration that the decedent was a lawyer; and if it was his intention to exclude his father from any share in his estate, and his will was made during

his mother's lifetime, and in her favor, it is reasonable to assume that the provision would have been that his real and personal estate should go to his mother, her heirs and assigns, and that he would not have made such a provision in a will drawn and executed after her decease. If the paper which the witnesses read was executed before the death of the decedent's mother, it could not, of course, have been the will signed by the two alleged subscribing witnesses who have been examined here; and yet it may very well be that decedent had executed another will prior to such decease, and that it was in his possession at the time of his last illness. Of course, we are met by the testimony of one witness that she saw the name of William Lee on the paper read by her, but she may have been mistaken in her assumed recollection of that circumstance, and she is not supported on the point by the others. If, on the other hand, we discredit the recollection of the one witness, that the devise was to the decedent's mother, her heirs and assigns, we encounter another difficulty in giving credit to the testimony of the three remaining witnesses, and that is that it does not seem to be credible that the decedent, after his mother's death, would have drawn or executed a will in the terms testified to by them. At the time the will in question is alleged to have been executed, the decedent was the only person who answered the description of heir at law of his mother, and the proponent and those whose interests he claims to represent here were not her heirs at law. If the decedent's intention was that they, as individuals, should take his whole estate, it is fair to presume that he was acquainted with their names, and that he would have inserted the same in the will, and that he would have defined the proportions in which division among them should be made, as they did not all stand in the same degree of kinship to his mother, unless he saw fit to have the division made between them equally, in which case he would have so provided; and, if he meant that those persons who should answer the description "my mother's heirs at law" at his own decease should take, he would have so provided. I am inclined to believe that the witnesses did see a will purporting to be signed by the decedent, which devised and bequeathed his property to his mother and her heirs, but that is not the paper which is sought to be probated here. If it were, the devise lapsed by her decease before him and the proponents would have no interest which would entitle them to maintain this proceeding. I do not think that the proponents have established their right to maintain the same; nor can I come to the conclusion that the provisions of the will have been clearly or distinctly proved by the testimony of two credible witnesses, as required by the statute; nor that the paper which was signed by the alleged subscribing witnesses was the same paper finally traced into the possession of decedent's father, and which is referred to in the testimony of the other witnesses. The motion to strike out the testimony of Charles I. Purdy as to conversations had by him with Nathaniel Purdy is denied. The petition for probate is dismissed.

Petition dismissed.