In the Matter of Proving the Last Will and Testament of SOLOMON HABER, Deceased.

Surrogate's Court, Bronx County, February, 1922.

Wills — execution — where subscribing witnesses sign before testator but remain in the room and later see him sign the will, which he has already declared to be such, the execution is sufficient — silence of witnesses amounts to acquiescence.

The declaration of a testator that a certain document is his last will and his request to the subscribing witnesses to act as such may be made before, during or after the testator has subscribed his name, provided they all take place as parts of the same transaction.

A competent testator, in the presence of practically his entire immediate family, declared a paper writing to be his last will and testament, and asked two persons, one of whom was his son-in-law, to act as witnesses. Just as testator was about to sign the document he said he felt bad and requested the witnesses to sign first and that he would sign later. While the witnesses were still in the room, in their presence, and within from fifteen minutes to an hour after they had signed their names, above the attestation clause, the testator felt better and said he would sign the will. After reading the paper aloud with his brother, testator, remarking upon the fact that the witnesses had signed it in the wrong place, signed it at the end of each page and told his son-in-law that he and his wife were getting all they should get. Later the testator expressed fear that the will might not be valid because the subscribing witnesses had signed where he should have subscribed his name and suggested that the will be redrawn and executed the following day. The next day the parties having again assembled, the testator died before the redrafted document was signed or executed. *Held,* that all that took place was part of the same transaction.

The subscribing witnesses, with the knowledge, acquiescence and consent of the testator, having adopted their signatures as attesting the execution of the propounded paper and the testator's subscription thereto, it was not imperative that the witnesses should again sign their names, and upon the facts it must be held that the paper was duly executed and entitled to probate.

Where the evidence as to whether the son-in-law left the room after he signed the paper and before the testator subscribed it was conflicting, the finding of the jury that the testator signed his name in the presence of both of the subscribing witnesses was warranted.

PROCEEDINGS on contested probate.

*William Mahler* (*Jacob Rieger,* of counsel), for proponents.

*Hartman & Levy* (*Hugo Levy,* of counsel), for contestants.

*Edward J. Walsh,* special guardian for infants.

SCHULZ, S. The petition for the probate of the last will and testament of the decedent recites that the latter left him surviving his wife and five children, of whom three daughters are the issue of a prior marriage of the decedent, and two are daughters of the decedent and his surviving wife. From the testimony it appears that the decedent's first marriage was terminated by a divorce,

Surrogate's Court, Bronx County, February, 1922.    [Vol. 118

one of the witnesses says by a "Jewish divorce," and that he was married to his surviving widow over twenty years ago.

Two of the three stepchildren of the widow filed objections to the propounded document, urging in effect that the paper was not the last will and testament of the decedent; that it was not executed with the formalities prescribed by statute and that it was not freely and voluntarily made, but was obtained and the subscription and publication thereof procured by fraud and undue influence and they requested a jury trial of the issues raised by such objections.

Thereafter, questions were framed for submission to the jury which, upon the trial and without objection, were modified, and one additional question added before submission to it. Upon motion of the proponent, the court directed the answers to be given by the jury as to some of the questions and submitted the others to them without such direction. The evidence in the matter and the answers of the jury established the following facts:

Solomon Haber, the decedent, being then seriously ill but of sound mind, memory and understanding, did, on the 12th day of December, 1920, proceed to execute his will. Practically his entire immediate family, including the two contestants, were present, either in the room where the decedent lay or in the apartment. He declared the propounded document, erroneously dated December 11, 1920, to be his last will and testament and asked two persons, one of whom was his son-in-law, the husband of one of the contestants, to act as witnesses, but just as he was about to sign the document, he said that he felt bad, that the witnesses should sign first and that he would sign later. The persons thus requested to be witnesses did subscribe the paper, but through an error, signed it above the attestation clause. Thereafter, while the two witnesses were still in the room, in their presence and within a period variously stated by different witnesses as being from fifteen minutes to one hour after the witnesses signed, the decedent felt better, and said: "Bring me the check book and I sign the will." He then took the paper, read it aloud with his brother, remarked upon the fact that the witnesses had signed it in the wrong place, signed it at the end of each page, spoke to his son-in-law, one of the witnesses, saying that he and his wife were getting all that they should get; later, said he feared that the will might not be valid because the witnesses signed where he should have subscribed his name and suggested that it be redrawn and re-executed the following day. The decedent was free from restraint at the time of the execution of the paper and it was not caused or procured by fraud, duress or undue influence. The next day, the parties having

again assembled, the decedent died before the redrafted document was signed or executed.

His son-in-law, one of the witnesses who had signed the document, claimed that he had left the room after he signed the paper and before the decedent had subscribed it and hence did not see the latter sign it. The evidence on this point was conflicting, but, in my opinion, the answer of the jury, to the effect that the testator signed in the presence of both of the witnesses, was fully warranted.

There was nothing secretive about the execution of this paper. By its terms, he gives, devises and bequeaths to his wife a house and lot on Eighty-third street in New York city, a house and lot in Monticello, N. Y., a mortgage in the sum of $2,750 and his right, title and interest in a millinery business; he provides for the repayment of loans of $1,700 and of $1,500, respectively, to the two contestants and bequeaths to them and their sister of the whole blood, the sum of $2,000, proceeds of a life insurance policy, to be divided between them in such a way that the two contestants shall receive $750 each and the other daughter $500. He devises to his wife, the two contestants and the two children of his second marriage, a parcel of real estate on Front street in the city of New York, and gives the proceeds of a $3,000 policy of life insurance to his wife and their two children, $500 to each child and $2,000 to his wife. The rest of his estate he gives, devises and bequeaths to his wife and nominates the latter and his brother as executors. It has been stipulated, for the purpose of this probate proceeding, that the value of his estate shall be considered to be between $27,000 and $35,000.

During the period of over twenty years since their marriage, the decedent and his surviving wife lived together; she has borne him two children and helped as the mother in the home to bring up at least two of the children of his first marriage. The evidence shows that she was devoted to him, frugal and industrious, and helped him amass the property he owned at the time of his death, if indeed she was not largely instrumental in its acquisition. Her two children are not as yet of full age, one being nineteen and the other fifteen years old. Under all of the circumstances, I do not consider the provisions of the document unnatural. *Matter of Dunn*, 184 App. Div. 386.

Upon the evidence submitted, it is not open to question that the decedent intended the propounded paper to be his last will and testament; that he was fully competent to execute it; that its execution was not due to any undue influence, fraud or duress and that it should be given effect as a valid testamentary disposition, unless there has been a failure to comply with the formalities of

execution required by our laws as set forth in section 21 of the Decedent Estate Law (Laws of 1909, chap. 18 as amd.; Cons. Laws, chap. 13). If there has been some omission in that regard, then the propounded paper may not be admitted to probate notwithstanding such intention; for while the latter is of importance when a will has been admitted and its construction or interpretation is involved, it may not be substituted for the requirements of the statute on an issue of probate. *Matter of O'Neil*, 91 N. Y. 516, 520; *Matter of Andrews*, 162 id. 1; *Matter of Whitney*, 153 id. 259, 264.

I do not consider the fact that the signatures of the alleged witnesses appear upon the document before the attestation clause, whereas the testator's signature appears after it, fatal to its probate. All of the signatures are after the end of the will, the attestation clause not being of a dispositive character. *Matter of Cohen*, 1 Tuck. 286; *Younger* v. *Duffie*, 94 N. Y. 535; *Matter of Laudy*, 161 id. 429, 432. That the witnesses signed before the decedent in point of time, however, presents a serious question.

All of the formalities required by the statute were complied with down to the time when the witnesses signed. The document had been declared by the decedent to be his last will and he had requested the witnesses to act as such. That such declaration and request were made before he had subscribed his name thereto is not important, for it has been held that they may be made before, during or after the act of subscription, provided they all take place as parts of the same transaction. *Jackson* v. *Jackson*, 39 N. Y. 153; *Perham* v. *Cottle*, 98 Misc. Rep. 48, 56; affd., 178 App. Div. 949; *Doe* v. *Roe*, 2 Barb. 200; *Lewis* v. *Lewis*, 13 id. 17; affd., 11 N. Y. 220; *Keeney* v. *Whitmarsh*, 16 Barb. 141.

Was this then all a part of the same transaction? The persons had assembled to attend the execution of the paper, and at least the witnesses remained until the decedent subscribed it. Shall we say that because fifteen minutes to one hour elapsed between the time of the declaration and request and the time when he signed, that the transaction had ceased, and if so, at what precise time did the one transaction end and the other begin? Is it not far more reasonable to hold that the transaction continued until the parties finally left his room and dispersed, believing that the business which had called them together had been finally accomplished? I know of no precedent which holds that time is the measure of such a transaction. It depends upon the circumstances of each case. *Vaughan* v. *Burford*, 3 Bradf. 78; *Matter of Baldwin*, 67 Misc. Rep. 329; affd., 142 App. Div. 904; *Rugg* v. *Rugg*, 21 Hun, 383; affd., 83 N. Y. 592.

If we assume, however, that such a request and declaration was

of no further effect after the witnesses signed, the evidence is sufficient to show a declaration and request after that time and immediately prior to the subscription by the decedent. For, when he was well enough to sign it, he referred to the paper as a will in the presence of both of the witnesses. This constituted a substantial compliance with the statute, so far as his declaration of the document is concerned which, under the decisions, is all that is necessary. *Matter of Hunt,* 110 N. Y. 278; *Matter of Turrell,* 166 id. 330, 337; *Doe* v. *Roe, supra.* It also clearly appears that he read the will after the witnesses signed it and before he subscribed it, and that such reading included the names of the persons he had asked to act as witnesses and who were present for that purpose, for, as heretofore stated, he commented upon the fact that they had signed in the wrong place. This has been held to be equivalent to a request that they act as witnesses. *Vaughan* v. *Burford, supra.*

*Jackson* v. *Jackson, supra,* seems to be the precedent followed in most of the cases thereafter decided which hold that signing by the witnesses before the testator makes the execution defective, and such no doubt is the law. *Sisters of Charity* v. *Kelly,* 67 N. Y. 409; *Matter of Purdy,* 25 Misc. Rep. 458; affd., 46 App. Div. 33; *Matter of Phillips,* 99 N. Y. 267. It is not optional with the persons in the execution of a testamentary document to perform the act of signing in any order they may choose. Subscribing witnesses to a will sign for the purpose of attesting, among other things, the signature of the decedent and this they cannot do if it has not been affixed when they sign. *Matter of Mackay,* 110 N. Y. 611; *Matter of Laudy,* 148 id. 403. Does this mean that no matter what occurs after the decedent signs the document, its probate may not be decreed if the witnesses have signed before the testator and that it may not be given effect, even though validly executed thereafter? I find no such intent expressed in the decisions. On the contrary, in *Jackson* v. *Jackson, supra,* 161, the court says: " May the testator keep these signatures in his possession one hour, one week or one year, and then add his signature? Certainly not, *unless he summons the same persons to see him sign, or hear his acknowledgment thereof.*" Italics are mine.

When the document was subscribed by the decedent, every formality required by the statute up to that point had been complied with. Nothing remained to be done except for the witnesses to sign again after the testator. If they had so signed, could it be successfully urged that there would nevertheless be a non-compliance with the statute, which would make necessary the negativing of his testamentary desires, and as a possible consequence, the impoverishment of his wife? I think not.

Surrogate's Court, Bronx County, February, 1922.     [Vol. 118

The final question to be determined then, is, was it absolutely essential that the witnesses sign again after the subscription by the decedent. If such subscription had been made at some later time, in the absence of the witnesses, then undoubtedly the document could not be given effect. The opportunities for fraud, which the statute is designed to prevent, would, under such circumstances, be clearly manifest. In this matter, however, the entire transaction took place in the same room, in the presence of the witnesses, without any break in the proceedings except that made necessary by a sudden severity in the illness of the decedent and without the slightest possibility or suggestion of fraud.

The witnesses having been summoned to act as such and being present in the room for that very purpose, saw the testator subscribe the instrument he had declared to be his will and which he then again referred to as his will; he had asked them to be witnesses, and, as he was signing, read their names subscribed to it as such. They did not refuse to act as witnesses and they did not sign it again and he did not insist that they sign it again. It seems to me clear from these facts that the witnesses adopted their signatures already made, as signatures to the due execution of the document, accomplished when the decedent subscribed it and did so with the knowledge and consent of the decedent. The language used by the learned surrogate in *Matter of Baldwin, supra,* which was affirmed by the Appellate Division upon his opinion, where the question was whether a signature by a witness before the declaration was effective, expresses my views. He wrote: " If, after the belated declaration, the witness should formally announce that his signature was confirmed with the same effect as if it had been made after the declaration, few would doubt that the witness had attested the act of declaration. What, then, is the difference whether the witness ratifies his act expressly or tacitly? Between a loud and strenuous affirmation that his signature shall stand and the silence by which he refrains from repudiating it, there is a difference of probative degree, but none in substance. One tends with great force, but the other, nevertheless, tends to show that the witness confirmed his signature and attributed to it the new relation and purpose which the declaration would impose upon it and that the testator at the same time regarded it as an attestation of his own subscription and declaration. No other meaning could be reasonably derived by either of them, and the law may safely invest the transaction with the character and value which it bore in their contemplation."

If I am right in my conclusion above stated, then the reasoning in *Matter of Karrer,* 63 Misc. Rep. 174, applies. In that matter,

the learned surrogate writing the opinion permitted a propounded paper to proceed to probate where the witnesses had signed before the testatrix, but immediately thereafter, and upon a separate occasion, the witnesses were brought into the presence of the testatrix and the testatrix acknowledged her subscription thereto in the presence of each of the attesting witnesses, declared the instrument to be her last will and testament and requested the witnesses to attest her act, and the witnesses with the knowledge of the testatrix reaffirmed their previous signatures without further writing. All of these things took place in this case, except possibly during one continuous transaction instead of two. In the course of his opinion, the surrogate cited and quoted from *Matter of Stickney*, 31 App. Div. 382; *Vaughan* v. *Burford, supra; Matter of Stewart's Will*, 2 Redf. 77, and *Jackson* v. *Jackson, supra*.

Commenting upon the latter case, he says: "Upon the facts there apparent the case determines nothing except that a will is not properly solemnized when the signatures of the witnesses, which were made at the request of the testator but before his own subscription, are followed by his own subscription without any renewal of his publication or request," and again, "As appears from the language quoted *infra*, the decision rests upon the absence of any publication or request after the paper was subscribed * * *." After quoting the language from the case of *Jackson* v. *Jackson*, which I have heretofore set forth, he says: "From the last sentence quoted, it is obvious that, in the personal opinion of the judge who wrote, the result would have been otherwise, if, after the signatures of the testator and the witnesses, there had been a further publication and request followed by the adoption of the witnesses' former signatures both by themselves and the testator." In *Matter of Stickney's Will*, there is also a statement in the opinion which seems to be in accord with my views, the court saying: "If it is republished in the presence of the original subscribing witnesses it may not be necessary for them to subscribe the will anew as witnesses, for the rewriting of their signatures would seem to be a useless formality."

The facts being as heretofore detailed, the inclination of the court is, and, in my opinion, properly should be, to carry out the testamentary wishes of the decedent and to see that his wife and helpmate receives what he intended she should have. The propounded paper should certainly be admitted to probate unless it is impossible under the statutes, and the law, to do so. It is not impossible to do this unless it was imperative that the witnesses again sign their names to the instrument. While the question is not free from doubt, I do not think that under the circumstances

here present and the reasoning in the *Karrer* case, this was necessary.

I hold that the witnesses adopted their signatures made before the subscription by the decedent with his knowledge, acquiescence and consent, as attesting the execution of the propounded paper, and the decedent's subscription thereto, and that under the facts of this case, this instrument offered for probate was properly executed.

The motions to dismiss made by the contestants, are, therefore, denied and exceptions allowed to such rulings and the document will be admitted to probate, with costs to the proponent, payable out of the estate.

Tax costs and settle decree on notice accordingly.